IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00221-MSK-MJW

CROCS, INC., a Delaware corporation,

    Plaintiff,

v.

AUSTRALIA UNLIMITED, INC., a Washington corporation,

    Defendant.

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

THIS MATTER comes before the Court on the Plaintiff's "Partial Motion to Dismiss Amended Counterclaims" **(#106)** and supporting brief **(#107),** to which the Defendant responded **(#118, #119)** and the Plaintiff replied **(#120).**

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

### II. Background

The Plaintiff, Crocs, Inc. ("Crocs"), and the Defendant, Australia Unlimited, Inc. ("AU"), are shoe manufacturers who sell competing lines of foam clog shoes. Crocs asserts claims against AU in a Second Amended Complaint **(#103)** for AU's manufacture and sale of a "Marquis Design" shoe. Crocs alleges that AU has breached a prior settlement agreement by manufacturing and selling the Marquis shoe and in other respects, and also asserts claims of patent infringement, trade dress infringement, and unfair competition.

In its Answer **(#104)**, AU asserts several counterclaims, including for breach of the

settlement agreement. The counterclaims pertinent to the instant motion are Counterclaim 2 (fraud in the inducement pertaining to the settlement agreement), Counterclaim 4 (declaratory judgment of non-infringement of Crocs' patents), Counterclaim 5 (declaratory judgment of invalidity of Crocs' patents), Counterclaim 6 (declaratory judgment of unenforceability of Crocs' patents) and Counterclaim 7 (attempted monopolization of the foam clog footwear industry in violation of the Sherman Act, 15 U.S.C. § 2).

### III. Issue Presented

Crocs moves to dismiss Counterclaims 2, 4 (in part), 5 (in part), 6 (in part), and 7 pursuant to Fed. R. Civ. P. 12(b)(1) and/or (6). The issue presented is whether any of these Counterclaims should be dismissed for the reasons Crocs espouses.

### IV. Analysis

**A. Counterclaim 2 (Fraud in the Inducement)**

Under Fed. R. Civ. P. 12(b)(6), Crocs moves to dismiss Counterclaim 2 (fraud in the inducement). Crocs does not contend that AU has failed to state a claim for fraud in the inducement. Instead, it contends that the claim must be dismissed because AU cannot obtain the remedy of rescission. It argues that AU did not give proper notice of its decision to seek recission and that such remedy is precluded because AU acted to enforce the agreement. AU responds that notice of an intent to rescind is not required in every circumstance, particularly when it is not possible to restore the *status quo ante*. It also asserts that it may plead inconsistent claims in the alternative under Fed. R. Civ. P. 8(e)(2).

There are a number of remedies that can be imposed upon determination that a contract was procured by fraud. At this juncture, it is not necessary to determine what remedy is

2

appropriate. Because Crocs alleges no deficiency in the statement of the claim, the request to dismiss Counterclaim 2 is denied.

**B. Counterclaims 4, 5 and 6 (Declaratory Judgment Claims)**

<u>**Rule 12(b)(6)**</u>

Under Fed. R. Civ. P. 12(b)(6), Crocs moves to dismiss Counterclaims 4, 5 and 6 – all of which seek declaratory relief with regard to Crocs' patents[1] – to the extent that they are premised upon United States Patent No. 6,993,858 ("the '858 Patent"), and United States Patent No. D 517,789 ("the '789 Patent"). It does not seek dismissal of these Counterclaims in their entirety, and agrees that the Counterclaims may proceed to the extent they are premised upon United States Patent No. D 517,790 ("the '790 Patent"), or to the extent they seek a declaratory judgment of non-infringement of the '789 Patent. Crocs only argues that the doctrine of *res judicata* bars determinations only as to the '858 and '789 Patents.

AU responds that the claims are not barred under the doctrine of *res judicata*, because the shoes at issue in this case are different than the shoes that were the subject of prior litigation, and because dismissal of a claim for patent invalidity does not have automatic *res judicata* effect due to public policy favoring exposure of invalid patents. Further, AU contends that it may assert claims for declaratory relief in defense to Crocs' claims.

Because the subject counterclaims can also be treated as defenses, and because partitioning the claims into assertions pertaining to differing patents is unwieldy at this juncture, the Court denies the request for dismissal. Such issues are better addressed in conjunction with a

---

[1] Counterclaims 4, 5 and 6 seek a declaration that AU has not infringed Crocs' patents, that Crocs' patents are invalid, or that Crocs' patents are unenforceable.

motion brought pursuant to Fed. R. Civ. P. 56.  *See Garcia v. International Elevator Co., Inc.*, 358 F.3d 777, 781-82 (10th Cir. 2004).

### Rule 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), Crocs moves to dismiss Counterclaims 4, 5 and 6 to the extent that they are directed at the '858 Patent.  It contends that no declaratory judgment jurisdiction exists because it has not asserted rights under the '858 Patent, thus there is no "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201.  AU responds that the Court has jurisdiction because AU has a reasonable apprehension of suit based upon the '858 Patent and produces potentially infringing shoes.  AU states that Crocs has sued AU three times for patent infringement and has threatened future litigation.

As noted earlier, Counterclaims 4, 5 and 6 can also be construed as defenses to the claims asserted in this lawsuit.  Although they are directed at multiple patents, and the '858 Patent may not be the subject of Crocs' claims, the Court has subject matter jurisdiction to consider Crocs' claims and AU's defenses to them.  Therefore, the Court denies the request to dismiss Counterclaims 4, 5 and 6 on these grounds.

## C.  Claim 7 (Attempted Monopolization)

### Rule 12(b)(6)

Under Rule 12(b)(6), Crocs moves to dismiss Counterclaim 7 (attempted monopolization of the foam clog footwear industry in violation of the Sherman Act) for failure to plead Clayton Act standing or all elements of the Sherman Act claim.  AU responds that it has sufficiently pled both Clayton Act standing and the elements of an attempted monopolization claim.

The Sherman Act, § 2 (15 U.S.C. § 2[2]) prohibits monopolization, or attempted monopolization, of "any part of the trade or commerce among the several States, or with foreign nations[.]" A private cause of action for such monopolization or attempt arises under § 4 of the Clayton Act (15 U.S.C. § 15(a)), which states: "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor[.]" For a plaintiff to have standing, the Clayton Act requires an "antitrust injury", *i.e.*, the type of injury which the antitrust laws were intended to prevent and which "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It also requires the plaintiff to be an "efficient enforcer of the antitrust laws" in order to have standing to seek damages. *See Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1268 (10th Cir. 2006).

For an antitrust claim, the resulting injury must reflect anticompetitive effects of the defendants' conduct. *Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745, 750, 753-54 (10th Cir. 1999). Antitrust laws were enacted to protect competition, not competitors, so in general, an injury suffered only by a competitor may not constitute an antitrust injury. *Brunswick*, 429 U.S. at 488. However, the loss of even one or two competitors can be an antitrust injury, depending upon the facts of the case. *Full Draw Productions,* 182 F.3d at 754 (elimination of a single competitor, leaving only one with a monopoly). If the plaintiff alleges that "competition fell prey to a competitor," rather than the reverse, then an antitrust injury is

---

[2] This statute provides criminal penalties for monopolization: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."

5

alleged. *Id.* There is an anticompetitive effect when a person eliminates a competitor "by means other than the economic freedom of participants in the relevant market." *Id.* at 755 (citation and quotations omitted). In considering whether a plaintiff is an efficient enforcer of the antitrust laws, relevant factors are "the directness or remoteness" of the plaintiff's injury, whether others were more directly injured than the plaintiff, and whether the plaintiff has economic interest in preserving competition in the marketplace. *Abraham*, 461 F.3d at 1268.

Once a plaintiff alleges facts demonstrating standing, the plaintiff must also allege the following in order to state a claim for attempted monopolization in violation of the Sherman Act: (1) a relevant market, including a geographic market and a relevant product market, exists; (2) there is a dangerous probability that the defendant will succeed in monopolizing the relevant market; (3) the defendant has a specific intent to monopolize; and (4) the defendant engaged in conduct to further such attempt. *Id.* at 756. Element 2 can be demonstrated in any number of ways, but factors to consider include the defendant's market share, the number and strength of other competitors in the market, market trends, and barriers to the entry of new competitors into the market. *Id.* As to each element, conclusory allegations are insufficient; a plaintiff must allege sufficient facts to give the defendant notice of what is claimed. *Id.* at 755.

Crocs argues that AU has failed to sufficiently plead an antitrust injury because it has not alleged injury to its business or property by market conditions that were affected by Crocs' conduct. It also argues that AU has failed to allege facts to support elements 2, 3 or 4 of the Sherman Act claim. AU disagrees.

In its counterclaims, AU alleges that there are many companies, apart from Crocs and AU, which design, import, market and sell foam clog shoes in the United States. AU also alleges

6

that Crocs denied approval for AU's Marquis shoe design, contrary to their settlement agreement, and in doing so "took the unreasonable, unwarranted and anti-competitive position that AU was barred from selling any foam clog shoe absent Crocs' approval." However, there are no specific allegations of any anti-competitive action by Crocs regarding any competitor apart from AU. AU's allegations are conclusory allegations, based upon information and belief, that "Crocs has engaged in illegal, unfair, and predatory acts calculated and intended to prevent and destroy competition in the manufacture, distribution, and sale of foam clog footwear" and that "Crocs has erected and attempted to erect artificial barriers to entry to competition in the manufacture, sale, and distribution of foam clog footwear by AU and others and through its acts has stifled innovation and development in the market for foam clog footwear." The only identifiable injury of which AU complains was specific to AU, and not an injury to competition in general. These allegations contain insufficient facts to support an anti-trust injury or standing under the Clayton Act.

In addition, AU has pled no facts that would, if true, establish specific intent by Crocs to monopolize the foam clog market, nor any dangerous probability that Crocs will succeed in doing so. AU alleges that Crocs is the dominant supplier of foam clog footwear in the United States market, and that Crocs has acted to restrain or eliminate competition to keep foam shoe prices high, to erect barriers to competition, and to prevent innovation in the foam clog market. However, there are no factual allegations to support these general assertions. For instance, there are no allegations as to Crocs' market share, the number and strength of other competitors in the market, market trends, or particular barriers or types of barriers to the entry of new competitors into the market. Under *Abraham*, 461 F.3d at 1268, AU's allegations are insufficient to support

7

elements 2, 3 or 4 of Counterclaim 7. As pled, Counterclaim 7 is inadequate and must be dismissed. However, dismissal for failure in pleading is ordinarily accompanied by an opportunity to amend.

### *Noerr-Pennington*

Crocs also argues that Counterclaim 7 is barred by the *Noerr-Pennington*[3] doctrine. In specific, it contends that the alleged antitrust violations are premised upon its legitimate enforcement of patent rights through litigation. AU responds that the *Noerr-Pennington* doctrine does not bar this claim, because Crocs cannot and has not legitimately enforce its patents. Instead, it contends that Crocs obtained them through fraud (*i.e.*, by failing to disclose the existence of prior art to the United States Patent and Trademark Office), and that Crocs brought this and other lawsuits for the improper purpose of harassing competitors.

The Court cannot assess the applicability of *Noerr-Pennington* absent a clear statement of the alleged non-competitive behavior. Due to the opportunity to replead Counterclaim 7, consideration of its application must be deferred.

**IT IS THEREFORE ORDERED** that the Plaintiff's "Partial Motion to Dismiss Amended Counterclaims" **(#106)** is **GRANTED IN PART** and **DENIED IN PART**. Within 10 days of this Order, AU may file Second Amended Counterclaims addressing Counterclaim 7, only, failing which Counterclaim 7 will be dismissed. No amendments shall be made to any other counterclaim. A response to any amended counterclaim shall be made within 10 days after

---

[3] The doctrine gets its name from *R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

amendment. Further motion to dismiss, in lieu of response, will be limited to such amendment.

Dated this 25th day of September, 2008

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge